447 A.2d 263

The FIRST NATIONAL BANK OF LANCASTER COUNTY, Formerly known as The First National Bank of Strasburg, Appellant,

v.

Kenneth L. BREWER, Sr. and Marie E. Brewer, Husband and Wife.

The FIRST NATIONAL BANK OF LANCASTER COUNTY, Formerly known as The First National Bank of Strasburg

v.

Kenneth L. BREWER, Sr. and Marie E. Brewer, Husband and Wife.

Appeal of Howard W. SEIPLE, Trading as George Seiple & Son.

Superior Court of Pennsylvania.

Argued June 23, 1981.

Filed April 30, 1982.

Reargument Denied July 21, 1982.

Petition for Allowance of Appeal Denied Nov. 15, 1982.

Mark S. Sigmon, Bethlehem, for appellant (at No. 315).

Thomas L. Walters, Easton, for appellant, (at No. 316) and for participating party (at No. 315).

Elwood M. Malos, Easton, for appellee (at No. 316).

Before HESTER, CAVANAUGH and DISALLE, JJ.

HESTER, Judge:

This appeal concerns the Sheriff's Schedule of Distribution of the proceeds from the sale of real estate formerly owned by Kenneth L. Brewer, Sr. and Marie E. Brewer, his wife. Exceptions to the Schedule of Distribution were filed by appellant First National Bank of Lancaster County (Bank of Lancaster) and appellant Howard W. Seiple, trading as George V. Seiple & Son, pursuant to Pa.R.C.P. 3136, 42 Pa.C.S.A. Following discovery, the Court of Common Pleas of Northampton County denied and dismissed the exceptions and affirmed the Sheriff's Schedule of Distribution, on January 12, 1981. The appeals of the Bank of Lancaster and Seiple have been consolidated for our disposition.

The Brewers had the following judgments entered against them in Northampton County:

1. Judgment in favor of Howard W. Seiple, filed July 31, 1969, at No. 737, May Term, 1969, and revived on June 26th, 1974, at No. 286 May Term, 1974.

2. Judgment in favor of Howard W. Seiple, filed September 28th, 1972, at No. 245 August Term, 1972 and revived July 29th, 1977, at No. 891 May Term, 1977.

3. Judgment in favor of Howard W. Seiple, filed September 28th, 1972, at No. 246 August Term, 1972, and revived July 29th, 1977, at No. 890 May Term, 1977.

4. Judgment in favor of The First National Bank of Lancaster County, filed June 11th, 1973, at No. 110 May Term, 1973.

5. Judgment in favor of Howard W. Seiple, filed June 26th, 1974, at No. 287 May Term, 1974.

6. Judgment in favor of First Valley Bank filed April 28th, 1976, at No. 303, April Term, 1976.

7. Judgment in favor of Greenberg filed December 10th, 1976, at No. 566 October Term, 1976.

8. Judgment in favor of First National Bank of Lancaster County, filed February 14th, 1977, at No. 225 January Term, 1977.

On August 1, 1977, the Bank of Lancaster filed a Praecipe for Writ of Execution on its judgment dated June 11, 1973, which resulted in a Writ of Execution being issued against the personal property of the Brewers.

On September 1, 1977, the Brewers, trading and doing business as Meadow Valley Dairy Farms filed a Petition for an arrangement under Chapter XI of the Federal Bankruptcy Act. Pursuant to this Petition, on October 6, 1977, the Bankruptcy Court issued notice for the first meeting of creditors. This notice also contained a statement that:

"The filing of the petition by the debtors above named operates as a stay of the commencement or continuation of any court or other proceeding against the debtors, of

the enforcement of any judgment against them, any act of the commencement or continuation of any court proceeding commenced for the purpose of rehabilitation of the debtors or the liquidation of the debtors or the liquidation of their estate, as provided by Rule 11–44."

The Petition filed by the Brewers listed the Bank of Lancaster, Seiple and The First Valley Bank as creditors. On October 20th, 1977, the Bank of Lancaster filed a proof of claim with the Federal Bankruptcy Court for the sum of $100,181.21.

The Bank of Lancaster caused its judgment dated June 11, 1973 to be revived by the filing of a praecipe on June 14, 1978.[1]

On December 14, 1978, the Federal Bankruptcy Court entered an Order on a Trustee's Petition which authorized the trustee to sell the real estate of the Brewers at public sale, subject to confirmation, with the sale to be held on January 13, 1979. However, on May 23, 1979, the Federal Bankruptcy Court denied the confirmation of the sale of the bankrupt's estate and entered an Order of Abandonment.

On December 15, 1977, Seiple filed proof of claims on its aforementioned judgment notes with the Bankruptcy Court. Seiple allegedly did not receive notice of the Bankruptcy Court's Order of Abandonment of May 23, 1979, until September 13, 1979. On September 14, 1979, the aforementioned Seiple judgments were revived.

The Schedule of Distribution filed by the Sheriff of Northampton County listed the priority of judgments for distribution as follows:

George V. Seiple & Son, Inc., 891 May Term, 1977, revived, $3,226.05.

Harold Seiple, trading as George V. Seiple & Son, 890 May Term, 1977, revived, $6,065.85.

Balance to First Valley Bank under judgment filed April 28th, 1976, $90,516.58.

On appeal, Seiple contends that its judgment, filed July 31, 1969, at No. 737 May Term, 1969, and revived on June 26,

1. June 14, 1978 was a Wednesday.

1974, at No. 286 May Term, 1974, is entitled to priority over the judgment of The First Valley Bank. Similarly, the Bank of Lancaster argues that its judgment filed June 11, 1973, at No. 110 May Term, 1973, is entitled to priority over the judgment of First Valley Bank.[2]

Both appellants concede that the judgments at issue were not revived within the normal five year period specified by Section 2 of the Judgment Lien Law of 1947, Act of July 3, 1947, P.L. 1234, 12 P.S. Section 878 (repealed).[3]

Both appellants advance alternative arguments in support of their position that they are entitled to priority over First Valley Bank. As a result of our disposition of this case, we will address only one issue.

Both appellants contend that the filing of the Petition for an arrangement under Chapter XI of the Federal Bankruptcy Act by the Brewers of September 1, 1977, acted as an automatic stay and suspended the five year period for the revival of the judgments through May 23, 1979, when the Bankruptcy Court denied confirmation of the sale of the Brewers' real estate and entered an Order of Abandonment with respect thereto.

We agree; and, therefore, reverse.

By order of October 6, 1977, the Federal Bankruptcy Court issued a notice for a first meeting of creditors concerning the Brewer Chapter XI Reorganization, which specifically operated ". . . as a stay of the commencement or continuation of any court or other proceeding against the debtors, of the enforcement of any judgment against them, any act of the commencement or continuation of any court proceeding commenced for the purpose of rehabilitation of the debtors or the liquidation of their estate. . ."

Section 391 of the Bankruptcy Act, 11 U.S.C., Section 791, which was in effect at the time, provided:

2. If appellants are correct, these judgments would exhaust the balance of the Schedule of Distribution.

3. The repealed section has been replaced by the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, 42 Pa.C.S.A. Section 5526(1).

"All statutes of limitations affecting claims provable under this Chapter and the running of all periods of time prescribed by Act in respect to the commission of acts of bankruptcy, the recovery of preferences and the avoidance of liens and transfers shall be suspended while a proceeding under this Chapter is pending and until it is finally dismissed."

Similarly, the rules of bankruptcy procedure concerning Chapter XI proceedings provided:

### PETITION AS AUTOMATIC STAY OF ACTIONS AGAINST DEBTOR AND LIEN ENFORCEMENT

"(a) *Stay of Actions and Lien Enforcement.* A petition filed under Rule 11–6 or 11–7 shall operate as a stay of the commencement or the continuation of any court or other proceeding against the debtor, or the enforcement of any judgment against him, or of any act or the commencement or continuation of any court proceeding to enforce any lien against his property, or of any court proceeding, except a case pending under Chapter X of the Act, for the purpose of the rehabilitation of the debtor or the liquidation of his estate.

(b) *Duration of Stay.* Except as it may be deemed annulled under subdivision (c) of this rule or may be terminated, annulled, modified, or conditioned by the bankruptcy court under subdivision (d), (e) or (f) of this rule, the stay shall continue until the case is closed, dismissed, or converted to bankruptcy or the property subject to the lien is, with the approval of the court, abandoned or transferred. . . ." Rule 11–44.[4]

Until the Bankruptcy Court entered its Order of Abandonment on May 23, 1979, the revival of appellants' liens was prohibited by federal law. More importantly, the revival of said liens during this period would have had no legal purpose or effect, if the Bankruptcy Court had confirmed the trus-

---

4. Therefore, the filing of the Brewer Petition on September 1, 1977, automatically stayed the commencement or continuation of any efforts to enforce appellants' liens against the Brewers, as a matter of federal law.

tee's sale of the real estate at issue, pursuant to its Order of December 14, 1978.

The effect of the Federal Bankruptcy Law is also consistent with Pennsylvania law as expressed by the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, effective June 27, 1978, as amended, 42 Pa.C.S.A. Section 5535(b), which states:

"*Stay of Matter*,—Where the commencement of a civil action or proceeding has been stayed by a court or by statutory prohibition, the duration of the stay is not a part of the time within which the action or proceeding must be commenced."

Although this Section of the Judicial Code was not in effect on Monday, June 12, 1978, which normally would have been the last day for the Bank of Lancaster to revive its judgment pursuant to the Judgment Lien Law of 1947, this Section of the Judicial Code was in effect on May 23, 1979, when the Bankruptcy Court entered its Order of Abandonment.

Therefore, a combined interpretation of the Federal Bankruptcy Law and the Judicial Code, under the circumstances of this case, serves to suspend the five-year revival period from September 1, 1977 through May 23, 1979. Accordingly, the liens of both appellants are entitled to priority over the judgment lien of First Valley Bank.

First Valley Bank argues that *Norristown Federal Savings & Loan v. Erwin (Appeal of Natoli)*, 186 Pa.Super. 81, 140 A.2d 458 (1958) held that a bankruptcy proceeding does not suspend the obligation to file a Writ of Revival. However, we find *Natoli* distinguishable. In that case, the lower court held that two judgments filed by Natoli against the debtor had lost their priority because they had not been revived. The judgments in question had been entered on November 5, 1949. On June 22, 1954, the debtors entered into a voluntary bankruptcy and the real estate in question was listed in the schedule of assets. Subsequently, the referee in bankruptcy abandoned the real estate and permitted a foreclosure on a mortgage against the real estate. The

real estate was sold by the Sheriff. The issue presented before the court was whether the lien of Natoli's judgments were indefinitely preserved by an adjudication of the debtors' bankruptcy notwithstanding the fact that the lien had not been revived and that the real estate was thereafter sold by a mortgage foreclosure in state court. We held that the filing of the bankruptcy petition did not indefinitely preserve the lien of Natoli's judgments. We rejected Natoli's contention that the filing of the bankruptcy permanently fixed the status and priority of the judgment debtors' lien creditors as of the time of the filing of the bankruptcy petition. We also noted that, at the time the bankruptcy referee had abandoned the real estate, the lien on Natoli's judgments had already expired.

With respect to the Bank of Lancaster, it had revived its lien prior to the Abandonment Order of May 23, 1979. With respect to the Seiple lien, the Judicial Code, 42 Pa.C.S.A. Section 5535(b) was in effect on June 25, 1979 (which was five years after its judgment was revived on June 26, 1974).

Reversed and remanded to the lower court with instructions to amend the Sheriff's Schedule of Distribution, consistent with this Opinion.

DISALLE, J., did not participate in the consideration or decision of this case.